RENDERED: JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0618-MR

LAWRENCE MILLER, JR.                                        APPELLANT

v.

APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 15-CI-00023

BRITTANY BUNCH,
ADMINISTRATRIX OF THE ESTATE
OF AUTUMN RAINE BUNCH AND
BRITTANY BUNCH                                             APPELLEES

OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE: COMBS, GOODWINE, AND LAMBERT, JUDGES.

COMBS, JUDGE: This matter concerns the distribution of settlement proceeds

paid as a result of the parties' compromise of claims asserted in a wrongful death

action. The action was filed against Appalachian Regional Healthcare, Inc.,

following delivery of the parties' stillborn child. This case has already had a

journey through our appellate system prior to this appeal. After our review, we

reverse the judgment and remand for entry of a judgment consistent with the decision of the Supreme Court of Kentucky in *Miller v. Bunch*, 657 S.W.3d 890 (Ky. 2022).

With certain exceptions, the provisions of KRS[1] 411.137 and KRS 391.033 (collectively known as Mandy Jo's Law) preclude a parent from recovering damages from an action for the wrongful death of his or her child or from inheriting any part of the child's estate if that parent has "willfully abandoned the care and maintenance of his or her child." As part of proceedings conducted to determine the proper distribution of the settlement proceeds recovered as a result of the parties' wrongful death action, Brittany Bunch, mother of Autumn Raine Bunch (the stillborn child), argued that Lawrence Miller, Jr., the child's father, had willfully abandoned the child. Bunch contended that as a consequence, Miller was precluded by the provisions of Mandy Jo's Law from participating in the settlement proceeds. After an evidentiary hearing, the Letcher Circuit Court found that Miller had indeed willfully abandoned Autumn Raine Bunch. The court agreed that Mandy Jo's Law precluded Miller from participating in the settlement proceeds and entered a judgment to that effect.

On appeal, a panel of this Court also agreed that the provisions of Mandy Jo's Law applied. We concluded that the circuit court's finding that Miller

---

[1] Kentucky Revised Statutes.

had willfully abandoned Autumn was supported by substantial evidence and affirmed the trial court's judgment. The Supreme Court of Kentucky then granted discretionary review.

Upon its review, the Supreme Court of Kentucky disagreed. It reasoned that the General Assembly had passed Mandy Jo's Law because "[i]t believed, as a matter of public policy, that parents who forego participation in their child's upbringing should be prevented from enriching themselves in the event that the child predeceases them." *Miller v. Bunch*, 657 S.W.3d 890, 895 (Ky. 2022). With this purpose in mind, the Court considered -- as a matter of first impression -- whether the plain language of Mandy Jo's Law "evinces Legislative intent to preclude recovery by an abandoning parent when the child in question is stillborn." *Id.*

After examining the language of the statute, a majority of the Court concluded that the legislature **did not intend** that the provision would apply in that circumstance. It analyzed the facts and the law as follows:

> First, neither of the exceptions to Mandy Jo's Law could ever apply to a stillborn child. The first exception, that "[t]he abandoning parent had resumed the care and maintenance [of the child] at least one (1) year prior to the death of the child," to state the obvious, could not apply to a stillborn child because the child would not yet be conceived one year prior to its death. The second exception, that "[t]he parent had been deprived of the custody of his or her child under an order of a court of competent jurisdiction" likewise could not apply to a

-3-

stillborn child because our courts do not enter custody orders for children until they are born.

Furthermore, while our case law regarding Mandy Jo's Law is extremely scant, the definition of "willful abandonment," is not applicable to a stillborn child. Moreover, our precedent regarding what constitutes "care and maintenance" is not applicable to a stillborn child. Neither "willful abandonment," nor "care and maintenance" are [*sic*] defined by statute. However, in the twenty-two years since the passage of Mandy Jo's Law, our appellate system has developed a definition of abandonment, as well as a test for determining whether a parent has abandoned the care and maintenance of his or her child. "Abandonment" for the purposes of Mandy Jo's Law means the neglect and refusal to perform natural and legal obligations to care and support, withholding of parental care, presence, opportunity to display voluntary affection and neglect to lend support and maintenance . . . It means also the failure to fulfill responsibility of care, training and guidance during the child's formative years.

As previously noted, as the statutes are currently written, no "legal obligations to care and support," i.e., child support and custody orders can be issued until a child is born. And how might a parent provide "presence" and "voluntary affection" to a child still in the womb? Finally, fulfilling the "responsibility, training and guidance during the child's formative years" is by its very wording only applicable to a child in his or her formative years. Certainly, one can provide financial and emotional support to the child's mother and perhaps indirectly benefit the child. **But, looking at the current definition of abandonment, that definition can only apply to a child that has been born and is living separately from his or her mother**.

In that vein, the facts previously considered by our courts to determine whether there has been willful

-4-

abandonment cannot be applied to a case involving a stillborn child. Whether a parent has abandoned his or her child is consistently stated to be a highly fact-specific inquiry that must be considered on a case-by-case basis. Though no fact is dispositive, those facts previously considered by our courts include: payment of child support; a [*sic*] involvement in the child's education; spending time with the child; knowledge of basic facts about the child such as favorite foods, names of child care providers, or diaper size; seeking formal or informal visitation rights; or providing funds to help provide the child with food, shelter, clothing, or any other necessities of life.

From a practical perspective, what factors could a trial court consider in a case involving a stillborn? By necessity, just as the circuit court did in this case, a trial court could only consider what the alleged abandoning parent did for the child while he or she was still *in utero*. This, in turn, requires looking at what the abandoning parent did *for the other parent*. Indeed, in its opinion and order in this case, the circuit court faults Mr. Miller for "willfully [abandoning] Ms. Bunch" no less than three times. It further found that he "offered no support, financial or otherwise, to Ms. Bunch"; that he "neglected and refused to offer care and support to Ms. Bunch and Autumn"; that he "did not visit Ms. Bunch to offer her support"; and that he "contributed nothing to the care and maintenance of Ms. Bunch and her unborn child."

Again, we acknowledge that by supporting and caring for the mother one provides at least some support and care for the child; to suggest otherwise would be disingenuous. But the Legislature's sole purpose in passing Mandy Jo's Law was to prevent a parent who has abandoned his or her child from benefitting financially from that child's untimely death. Accordingly, the dispositive inquiry under Mandy Jo's Law **is whether a parent abandoned the child, not the mother**. This, in turn, necessitates that the alleged abandoning parent has

-5-

had a meaningful opportunity to be part of a child's life once the child is a living being separate from his or her mother.

Consequently, without clear expression from our General Assembly, this Court cannot use Mandy Jo's Law to find willful abandonment of a child based solely on the nature of the relationship between the parents during the mother's pregnancy. This is particularly so in a case such as the one at bar wherein even Ms. Bunch acknowledged that Mr. Miller may not have been Autumn's father. It smacks of injustice to require a man who did not know for certain that the child was his until well after her death to provide financial and emotional support to the child's mother during her pregnancy. It also unfairly presumes that, had Autumn lived post-birth, Mr. Miller would not have sought custody rights once his paternity was confirmed.

*Miller v. Bunch*, 657 S.W.3d 890, 896-98 (Ky. 2022) (citations omitted) (emphases added).

The Supreme Court of Kentucky reversed the circuit court's judgment. It specifically ordered that the circuit court's findings of fact and conclusions of law be vacated and that a judgment be entered consistent with its decision. The matter was then remanded to the circuit court for entry of that judgment.

Upon remand, the circuit court's judgment and order were entered on March 13, 2023. The judgment recited that the matter had been remanded following the determination of the Supreme Court of Kentucky that "Mandy Jo's Law does not pertain in this matter and [Lawrence Miller] did not abandon his child . . . ." The circuit court acknowledged that its initial findings of fact,

-6-

conclusions of law, and judgment were to be vacated and that a new judgment consistent with the decision of the Supreme Court of Kentucky was to be entered. The circuit court's judgment provided that the settlement proceeds "shall be divided between [Brittany Bunch, the child's mother] and [Lawrence Miller]."

However, by its subsequent order entered on May 10, 2023, the circuit court vacated its own judgment of March 13, 2023. The circuit court granted the motion of Brittany Bunch to alter, amend, or vacate. It concluded that its finding that the stillborn child, "would, if born alive, have suffered a disability so profound as to preclude her from gainful employment was now the "Law of the Case" that would preclude any wrongful death recovery." It provided further that its finding that "the behavior of [Lawrence Miller] from the time he learned that [Brittany Bunch] was pregnant until the funeral of Autumn Raine Bunch, had destroyed the value of any consortium claim that [he] might have had. . . ." And it determined that finding to be the "Law of the Case." The circuit court then held that, as a consequence, Lawrence Miller "is entitled to no part of the settlement proceeds which were previously awarded to [Brittany Bunch] by this Court." The court ordered that a judgment in favor of Brittany Bunch be entered and that Lawrence Miller "take nothing." This appeal followed.

On appeal, Miller argues that the Supreme Court of Kentucky decided -- as a matter of law -- that he did not abandon his stillborn child and that he and

the child's mother are identically situated with respect to the wrongful death claims and the resulting settlement proceeds. He contends that the judgment of the Letcher Circuit Court must be reversed as inconsistent with the decision and orders of the Supreme Court.

In response, Brittany Bunch argues that the circuit court's findings of fact were "affirmed as supported by substantial evidence by both the Court of Appeals and the Kentucky Supreme Court." She contends that the circuit court's finding that Miller's "behavior upon learning that Ms. Bunch was pregnant had destroyed any value which his potential loss of consortium claim might have otherwise had" governs the distribution of the proceeds and prevents Miller from participating in the settlement. We disagree.

The Supreme Court of Kentucky recounted the testimony of the parties and of others concerning Miller's actions upon his learning that Bunch was pregnant. It rejected as a matter of law the trial court's determination that a finding of abandonment of a child pursuant to the provisions of Mandy Jo's Law could be predicated on the nature of the relationship between the parents during the mother's pregnancy. Consequently, it specifically rejected the trial court's finding that Miller had abandoned his stillborn child, and it ordered that finding vacated. The circuit court's judgment (along with the previous opinion of this Court

affirming) was reversed by the Kentucky Supreme Court, and the matter was remanded for entry of a judgment consistent with its decision.

The judgment of the circuit court entered on May 10, 2023, directly contradicts the decision of the Kentucky Supreme Court. Its original ruling was reversed by the Supreme Court, and despite its most current ruling in the appeal now before us, it is **not** the law of the case. It is a nullity having no force or precedential value. The judgment of the Letcher Circuit Court **was not affirmed upon any basis**; its findings of fact and conclusions of law were categorically vacated. The language of the Kentucky Supreme Court's decision unequivocally indicates that the Court determined that the matter had been absolutely wrongly decided by the circuit court and that judgment must be entered in favor of Miller.

Consequently, the matter is again remanded for entry of a judgment consistent with the decision of the Kentucky Supreme Court in *Miller v. Bunch*, 657 S.W.3d 890 (Ky. 2022).

ALL CONCUR.

BRIEF FOR APPELLANT:

Kevin W. Johnson
Hazard, Kentucky

BRIEF FOR APPELLEES:

Steven M. O'Brien III
Lexington, Kentucky

Daniel F. Dotson
Whitesburg, Kentucky